# EXHIBIT A

215 Nassau Street
Princeton, NJ 08542
USA

Telephone: 609-497-0796
Fax: 609-924-3194

# T.CO METALS LLC

**DEMPSEY PIPE**
80 Liberty Street
Bolivar, NY 14715

25 February 2005

**SALES CONTRACT 2094**
(Four pages)

**T.CO METALS LLC**, as seller, hereby sells to **DEMPSEY PIPE,** as buyer, the undermentioned goods against the seller's standard terms and conditions of sale:

**PRODUCT** : Prime newly manufactured electric resistant welded pipe, completely free from burrs, weld bead flash / slag or any debris.

**ORIGIN** : CINTAC S.A. - Chile

**QUALITY** : ASTM A53-02 Grade B, dual certified to ASME SA53-01 Grade B. Weld seam annealed

**PIPE ENDS** : Plain end, bevelled 30 (-0/+5) degrees as per ASTM A53 specification.

**WELD BEAD** : Internal weld bead removed / scarfed

**COATING** : Suitably externally coated with mill's varnish / lacquer coating to prevent corrosion.

**SIZE / TONNAGE** :

| NPS (inches) | OD (inches) | Wall (inches) | Length (feet) | Theoretical weight (lbs / ft) | Quantity (mt) |
|---|---|---|---|---|---|
| 6.00 | 6.625 | 0.188 | 20 | 12.92 | 140 |
| 6.00 | 6.625 | 0.250 | 20 | 17.00 | 1200 |
| 6.00 | 6.625 | 0.280 | 20 | 18.97 | 100 |

**QUANTITY** : 1,440 mt

**TOLERANCES** : Quantity tolerance: +/-10% in quantity per item and total

Length tolerance: +2/-0 inches
Straighness tolerance: Maximum 0.25 inches in 20 ft

**PIECES PER BUNDLE** : Seven pieces per bundle.

**PACKING** : Material packed in export bundles, securely banded with minimum two sets of three galvanized steel bands on each end and minimum two galvanized centre bands, for a total of eight galvanized bands.

**PORT OF SHIPMENT** : Any port in Chile port

**PORT OF DISCHARGE** : Philadelphia - USA

**DISCHARGE TERMINAL** : Tioga Marine Terminal.

**SHIPMENT** : In two shipments as per the following shipment schedule:

| NPS (inches) | OD (inches) | Wall (inches) | Length (feet) | By 15 April 2005 (mt) | By 15 May 2005 (mt) |
|---|---|---|---|---|---|
| 6.00 | 6.625 | 0.188 | 20 | | 140 |
| 6.00 | 6.625 | 0.250 | 20 | 800 | 400 |
| 6.00 | 6.625 | 0.280 | 20 | 100 | |

**PRICE** : All prices are loaded per truck port of discharge

| NPS (inches) | OD (inches) | Wall (inches) | Length (feet) | USD / 100 FT |
|---|---|---|---|---|
| 6.00 | 6.625 | 0.188 | 20 | 504.05 |
| 6.00 | 6.625 | 0.250 | 20 | 661.83 |
| 6.00 | 6.625 | 0.280 | 20 | 739.83 |

**INVOICING** : Priced per foot

**PAYMENT** : Within 30 days from release of material in discharge port.

**INSURANCE** : Marine insurance to be covered by buyer

**DOCUMENTS** :
(a) Original commercial invoice
(b) Packing list
(c) Mill's Test Certificates

**FORCE MAJEURE** : Seller shall not be liable to buyer for failure or delay caused by riots, civil commotion's wars, hostilities between nations, government laws, orders or regulations, embargoes, actions, imposition of any new antidumping and / or countervailing or similar duties, actions by any government or agency thereof, acts of God, storm, fire, accident, strike, sabotage, explosion,

shortage in supplies and stock, or other similar or different contingency preventing performance by the seller and which is beyond the reasonable control of seller, and buyer is bound (1) to accept the delayed shipment or delivery made within a reasonable period after such an event has ceased to prevent performance by the seller or (2) to accept the termination by seller of all or any part of this contract.

**CLAIM** : Notice in writing of any claim by buyer shall be delivered to seller within 30 (thirty) days after release of goods by seller and shall be accompanied by satisfactory documentary evidence(s) thereof detailing the specific nature of each reject. Buyer and seller undertake to co-operate fully with each other. Seller is not responsible for consequential loss or damage.

**ARBITRATION** : In the event of a dispute, claim or controversy between the buyer and seller, both parties shall use their best efforts to resolve the matter amicably through negotiations. Any such dispute, claim or controversy between us which cannot be resolved through negotiations within a period of 30 days of the notification of such a claim, dispute or controversy, shall be referred to and finally resolved by arbitration under the International arbitration rules of the American Arbitration Association. Arbitration will take place in New York, NY USA and proceedings will be conducted in English. The award of the Arbitration tribunal will be final and subject to no appeal. The costs and expenses of the prevailing party (including, without limitation, reasonable attorney's fees) will be paid by the other party.

**GOVERNING LAW:** Laws of the State of New York

In the event of any conflict between seller's standard terms and conditions of sale and any term or condition of this contract, the terms and conditions of this contract shall prevail. The seller's standard terms and conditions of sale are available upon request.

For and on behalf of **T.CO METALS LLC:**

_______________________________

For and on behalf of **DEMPSEY PIPE:**

_______________________________

215 Nassau Street
Princeton, NJ 08542
USA

Telephone: 609-497-0796
Fax: 609-924-3194

# T.CO METALS LLC

**DEMPSEY PIPE**
80 Liberty Street
Bolivar, NY 14715

25 April 2005

**SALES CONTRACT 2095**
(Four pages)

**T.CO METALS LLC**, as seller, hereby sells to **DEMPSEY PIPE,** as buyer, the undermentioned goods against the seller's standard terms and conditions of sale:

**PRODUCT** : Prime newly manufactured electric resistant welded pipe, completely free from burrs, weld bead flash / slag or any debris.

**ORIGIN** : CINTAC S.A. - Chile

**QUALITY** : ASTM A53-02 Grade B, dual certified to ASME SA53-01 Grade B. Weld seam annealed

**PIPE ENDS** : Plain end, bevelled 30 (-0/+5) degrees as per ASTM A53 specification.

**WELD BEAD** : Internal weld bead removed / scarfed

**COATING** : Suitably externally coated with mill's varnish / lacquer coating to prevent corrosion.

**SIZE / TONNAGE** :

| NPS (inches) | OD (inches) | Wall (inches) | Length (feet) | Theoretical weight (lbs / ft) | Quantity (mt) |
|---|---|---|---|---|---|
| 6.00 | 6.625 | 0.250 | 20 | 17.00 | 1000 |

**QUANTITY** : 1,000 mt

**TOLERANCES** :

Quantity tolerance: +/-10% in quantity per item and total
Length tolerance: +2/-0 inches
Straightness tolerance: Maximum 0.25 inches in 20 ft

TCO 0297

**PIECES PER BUNDLE** : Seven pieces per bundle.

**PACKING** : Material packed in export bundles, securely banded with minimum two sets of three galvanized steel bands on each end and minimum two galvanized centre bands, for a total of eight galvanized bands.

**PORT OF SHIPMENT** : Any port in Chile port

**PORT OF DISCHARGE** : Philadelphia - USA

**DISCHARGE TERMINAL** : Tioga Marine Terminal.

**SHIPMENT** : In two shipments as per the following shipment schedule:

| NPS (inches) | OD (inches) | Wall (inches) | Length (feet) | By 31 July 2005 (mt) | By 31 August 2005 (mt) |
|---|---|---|---|---|---|
| 6.00 | 6.625 | 0.250 | 20 | 500 | 500 |

**PRICE** : All prices are loaded per truck port of discharge

| NPS (inches) | OD (inches) | Wall (inches) | Length (feet) | USD / 100 FT |
|---|---|---|---|---|
| 6.00 | 6.625 | 0.250 | 20 | 671.00 |

**INVOICING** : Priced per foot

**PAYMENT** : Within 30 days from release of material in discharge port.

**INSURANCE** : Marine insurance to be covered by buyer

**DOCUMENTS** :
(a) Original commercial invoice
(b) Packing list
(c) Mill's Test Certificates

**FORCE MAJEURE** : Seller shall not be liable to buyer for failure or delay caused by riots, civil commotion's wars, hostilities between nations, government laws, orders or regulations, embargoes, actions, imposition of any new antidumping and / or countervailing or similar duties, actions by any government or agency thereof, acts of God, storm, fire, accident, strike, sabotage, explosion, shortage in supplies and stock, or other similar or different contingency preventing performance by the seller and which is beyond the reasonable control of seller, and buyer is bound (1) to accept the delayed shipment or delivery made within a reasonable period after such an event has ceased to

prevent performance by the seller or (2) to accept the termination by seller of all or any part of this contract.

**CLAIM** : Notice in writing of any claim by buyer shall be delivered to seller within 30 (thirty) days after release of goods by seller and shall be accompanied by satisfactory documentary evidence(s) thereof detailing the specific nature of each reject. Buyer and seller undertake to co-operate fully with each other. Seller is not responsible for consequential loss or damage.

**ARBITRATION** : In the event of a dispute, claim or controversy between the buyer and seller, both parties shall use their best efforts to resolve the matter amicably through negotiations. Any such dispute, claim or controversy between us which cannot be resolved through negotiations within a period of 30 days of the notification of such a claim, dispute or controversy, shall be referred to and finally resolved by arbitration under the International arbitration rules of the American Arbitration Association. Arbitration will take place in New York, NY USA and proceedings will be conducted in English. The award of the Arbitration tribunal will be final and subject to no appeal. The costs and expenses of the prevailing party (including, without limitation, reasonable attorney's fees) will be paid by the other party.

**GOVERNING LAW:** Laws of the State of New York

In the event of any conflict between seller's standard terms and conditions of sale and any term or condition of this contract, the terms and conditions of this contract shall prevail. The seller's standard terms and conditions of sale are available upon request.

For and on behalf of **T.CO METALS LLC:**

____________________________

For and on behalf of **DEMPSEY PIPE:**

____________________________

# EXHIBIT B

BEFORE THE INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION OF THE AMERICAN ARBITRATION ASSOCIATION

CASE NUMBERS 50154T 0027806 50 143T 0027806

In the Matter of the Arbitration Between T.Co. Metals LLC.,

Claimant,

vs.

DEMPSEY PIPE & SUPPLY, INC.,

Respondent.

11:30 a.m.
November 17, 2006
White & Case
1155 Avenue of the Americas
New York, New York

B E F O R E:

Paul D. Friedland, Esq.

Reported by:
Robert X. Shaw, CSR
CSR NO. 817
JOB NO. 189448

Page 74

there is a conflict, and number 2, it fits like a glove, with the language that says, this clause 3.7 applies with respect to amounts that become payable, and they simply did not.

I think all of my other points have been covered in the body of the question and answer, except, I did want to make one or two comments on profit, because it is presented to you as an equitable consideration on the motion that we processed the stuff and sold it and made money, the statement, we made money.

So, this is a little bit of by way of preview of what we will talk about on the merits and terms of fairness.

Before dealing with T.Co., Dempsey dealt only with domestic sources of supply.

And in the most recent transactions, say, in late 2004, before turning to T.Co. on the domestic market, Dempsey paid in approximate terms $1,000 per ton for pipe, and resold after processing, at

Page 75

profit margins, gross margins ranging upward from 25 percent, depending on market conditions.

And that means in approximate terms they bought for 1,000 -- and resold for 1,333 per ton and up.

So the normal margin was 300, $333 per ton. The attraction with dealing with T.Co. for this Chilean pipe, the benefit of the bargain was that we could buy pipe from them for $780 a ton, and not a thousand, and resell it under the pricing formula based on the domestic pipe that our competitors were buying and selling, and make additional profit based on the reduced cost in the increased margin.

The benefit of the bargain was the increased profit from buying cheaper product, and T.Co. knew that.

I think that is why T.Co. was in the business of importing pipe, because it would give buyers like Dempsey a competitive advantage and an additional

Page 76

margin.

Now, when you hear what happened with this pipe, you will hear that Dempsey was only able to sell this Chilean pipe, the nonconforming pipe for $900 a ton.

You will hear that with shipping costs, the fully loaded costs was about $810 a ton, including shipping costs, so that we made a margin on this stuff of $90 a ton, whereas our old margin on domestic had been 333 or more, and whereas our expectation under this contract had been at least $500 a ton, because we would be on top of the 333, plus the difference on the lower price.

So, it is not a question -- we process the stuff and made a profit, we made a profit which was dramatically lower than what we made by domestic pipe, and even more dramatically lower than the contracted for expectation.

And that is what the damages evidence will show, and we will talk

Page 77

about that some more when we talk about the subpoenas.

Just one or two other loose points, I think.

One, upon the denial of the application of the claimant for an interim award, assuming you do deny the application, it seems to me that this is a separate stage of the proceedings, where the respondent, as the prevailing party, should be entitled to an award of attorney's fees incurred in connection with this phase of the proceedings.

And I put an exclamation point on that, because I think we talked specifically about it at the preliminary conference as to whether this was necessary and appropriate, in light of the fact that we are coming back here in such a short period of time.

I do submit that there ought to be an award in favor of Dempsey, for attorney's fees and costs as the prevailing party on this application, and

Page 86

Two things that I would like to say.

First of all, I think, a pretty interesting question if this so-called oral agreement folds up, and it is supposed to trump everything that is written, it seems to me that to trump the fee provisions that are in the written contract.

But beyond that, it seems to me that any fee application by either party actually should await the conclusion of all of the proceedings, because under the contract as written, fees are to be paid to the prevailing party.

And given the fact that there is a claim and a counterclaim, the determination of who actually prevails at the end of the day could be a matter of some, you know, some discussion.

But let's just posit a few possibilities.

The determination, either today or at the end of the proceedings that T.Co. is entitled to recover its unpaid bills,

Page 87

on the other hand, that doesn't foreclose the possibility that Dempsey is entitled to damages in some amount.

Another possibility is, we are not entitled to an actual payment, maybe there is a setoff, and we had a long discussion about whether any money is due, and maybe Dempsey prevails on that, and doesn't get any damages, which is a possibility, or they get a fraction of what they are claiming.

So, who is going to be the prevailing party under the scenario that actually plays out, I don't think can be determined, a matter that can't be determined until these proceedings finish.

With that, would you mind if I stand a little while?

MR. FRIEDLAND: Go ahead.

This discussion makes me think of the question of whether a counterclaim under the oral agreement, as I have come to understand it this morning, is subject

Page 88

to the arbitration clause and the sales contracts.

MR. GOLDSTEIN: Let's take a look at the clause. We will take them in order.

The clause says, in the event of a dispute, claim or controversy between the buyer and the seller, they shall use their best efforts. Any such dispute, claim or controversy between us which cannot be resolved through negotiations shall be finally resolved by arbitration.

So, I think that we have an extraordinarily broad clause not even limited by, relating to this agreement.

So, I submit to you that any dispute relating to the oral compensation agreement is arbitrable.

MR. FRIEDLAND: It is a weirdly broad clause.

MR. GOLDSTEIN: I think it is useful, and sort of a bridge from the discussion that we got on the interim award to the discussion on the subpoena, to give you just a recap of what I think

Page 89

is the damages formula on Dempsey's case.

I think the -- first of all, I think when the 2716 talks about the difference between the value of the goods received and the value of conforming goods, that means market value for what we could sell them for. So it is a lost profits case.

The formula which we will present to you will be price we could have sold it for, and let's just, for argument's sake say, that is 1,500 -- and the price we bought it for, and let's say the 780 plus, or argument, 800, equals an expected profit of 700 per ton.

And you have to multiply that by the number of tons, which in this case turns out to be 2,090 tons.

Now, that formula presumes we paid 800 a ton for 2,090 tons, whereas in fact, we paid 800 a ton for 2,090 tons, less $338,000, that we did not pay.

So --

MR. FRIEDLAND: Excuse me. Is your claim for breach of the oral agreement?