## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                            :
In the Matter of the Arbitration Between    :
                                            :
T.CO METALS LLC,                            :        No. 07 CV 7747 (PAC)
                                            :
            Petitioner/Plaintiff,           :        ELECTRONICALLY FILED
     v.                                     :
                                            :
DEMPSEY PIPE & SUPPLY, INC.,                :
                                            :
            Respondent/Defendant.           :
_____:
                                            :
DEMPSEY PIPE & SUPPLY, INC.,                :        No. 07 CV 7749 (PAC)
                                            :
            Petitioner                      :
     v.                                     :
                                            :
T.CO METALS LLC,                            :
                                            :
            Respondent                      :
_____:

## MEMORANDUM OF T.CO METALS LLC IN OPPOSITION TO DEMPSEY PIPE & SUPPLY, INC.'S MOTION TO VACATE, MODIFY AND CORRECT AN ARBITRATION AWARD AND IN SUPPORT OF T.CO'S APPLICATION TO MODIFY OR VACATE ARBITRATION AWARD

MONTGOMERY, MCCRACKEN,            D'AMATO & LYNCH, LLP
  WALKER & RHOADS, LLP

Alfred J. Kuffler                 Stephen F. Willig
Lathrop B. Nelson, III            Meleena M. Bowers
123 South Broad Street            70 Pine Street
Avenue of the Arts                New York, New York 10270
Philadelphia, PA 19109            (212) 269-0927
(215) 772-1500

Attorneys for T.Co Metals, LLC

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     THE ARBITRATOR PROPERLY AMENDED THE AWARD PURSUANT TO
        THE ICDR RULES.................................................................................................. 3

        A.      The Arbitrator Carefully Considered And Applied The ICDR Rules In
                Amending The Award To Account For Acknowledged Clerical Errors .............. 3

        B.      Dempsey's Reliance On <u>Hyle</u> Is Misguided .......................................................... 5

        C.      The Power To Correct Clerical Errors Is Meaningless Without The Power
                To Correct Conclusions That Were Materially Based Upon Those Errors. .......... 6

III.    DEMPSEY IMPROPERLY CHALLENGES THE ARBITRATOR'S FACTUAL
        FINDINGS REGARDING DEMPSEY'S PROCESSING COSTS ................................. 8

        A.      Contrary To Controlling Law, Dempsey Seeks Correction Of A Claimed
                "Clearly Erroneous" Factual Finding..................................................................... 8

        B.      The Second Circuit Does Not Permit A District Court To Modify An
                Award Based Upon "Clearly Erroneous" Factual Findings ................................. 9

        C.      The Arbitrator Has Already Rejected Dempsey's Argument That He
                Committed A Miscalculation.................................................................................. 12

        D.      In Any Event, The Arbitrator Carefully Resolved Conflicting Evidence............ 13

IV.     THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW BY
        AWARDING CONSEQUENTIAL DAMAGES TO DEMPSEY ................................. 14

        A.      Dempsey And Its Counsel Have Admitted That Its Claim Is One Of Lost
                Expectations........................................................................................................... 15

        B.      The Arbitrator's Award Of Consequential Damages Falls Within The
                Narrow Grounds For Modifying An Award ......................................................... 16

V.      CONCLUSION....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

Hardy v. Walsh Manning Securities, L.L.C., 341 F.3d 126 (2d Cir. 2003)................................. 16

Hyle v. Doctor's Assocs., Inc., 198 F.3d 368 (2d Cir. 1999)............................................. 1, 4, 5, 6

Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC,
    497 F.3d 133 (2d Cir. 2007) .................................................................... 2, 10, 11, 13

Wallace v. Buttar, 378 F.3d 182 (2d Cir. 2004) ......................................................... 10, 13, 16, 17

**FEDERAL STATUTES**

9 U.S.C. § 11(a) ...................................................................................................................... 8, 9

The parties have placed before the Court petitions to modify the Amended Final Award, dated June 4, 2007, entered in an arbitration proceeding that clearly did not meet the expectations of either party.[1]  However, while T.Co raises a discrete challenge to a manifestly erroneous legal finding by the Arbitrator in the Amended Final Award, Dempsey improperly seeks to challenge the award's factual underpinnings, notwithstanding that the Second Circuit does not permit such a challenge and, in any event, the Arbitrator has already rejected the arguments Dempsey raises here.

## I.    <u>INTRODUCTION</u>

Both of the arguments raised in Dempsey's petition lack merit.

***First***, the Arbitrator, acting within the confines of the International Centre for Dispute Resolution ("ICDR") Rules, carefully considered both parties' post-award submissions and determined that the award contained four clerical errors that were material, such that correction of these errors necessarily altered a key component of Dempsey's damages.  As a result, the ICDR Rules expressly authorized the Arbitrator to amend the award.  Dempsey's contention that the court's decision in <u>Hyle v. Doctor's Assocs., Inc.</u>, 198 F.3d 368 (2d Cir. 1999), precludes the Arbitrator from amending the award plainly misreads the decision, which ultimately supports T.Co's position that deference is due to the Arbitrator in addressing errors within arbitration awards.

***Second***, Dempsey's attempt to correct what it deemed to be a "clearly erroneous assumption of fact" relating to reprocessing costs is not a permissible ground for challenging an

---

[1] Throughout this memorandum, T.Co refers to the April 20, 2007 Final Award attached as Exhibit E to the Declaration of Alfred J. Kuffler ("Kuffler Decl.") ("Final Award"), the Arbitrator's May 30, 2007 Order attached as Exhibit F to the Kuffler Declaration ("May 30 Order"), and the June 4, 2007 Amended Final Award attached as Exhibit G to the Kuffler Declaration ("Amended Final Award").

arbitration award.  As recently as three months ago, the Second Circuit confirmed the narrow grounds available to vacate or modify an arbitration award and, in doing so, effectively shut the door on any attempt by any party to make a factual challenge to an award.  See Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC, 497 F.3d 133, 139 (2d Cir. 2007).  Dempsey's attempt to couch its argument within the confines of a "mathematical error" or as an "evident material miscalculation of figures," and thus creep within the narrow grounds for modifying an award under the Federal Arbitration Act, simply ignores that the alleged error or miscalculation is based upon a fundamental disagreement with one of the Arbitrator's *factual* findings.  The Arbitrator carefully considered and resolved conflicting evidence regarding the pipe and should not be second guessed by Dempsey or this Court.  Just as the Arbitrator considered and rejected this argument in Dempsey's post-award brief, so too should this Court – under controlling authority – reject Dempsey's attempt to obtain reconsideration of its factual arguments.

In contrast to Dempsey's petition, T.Co's application presents a straightforward argument grounded in one of the few, narrow bases for challenging an Arbitrator's decision as reaffirmed in Porzig, supra.  As set forth in T.Co's opening memorandum in these proceedings and below, the Arbitrator committed a manifest error of law by, on the one hand, appropriately finding that consequential damages were barred by the parties' contracts, and, on the other, awarding consequential damages to Dempsey.  The Arbitrator knew the law – it had been presented and argued to him – yet disregarded it.  Such a disregard of the law is a ground for vacating the $340,587 windfall improperly awarded to Dempsey for its contractually unrecoverable lost profits.

## II.     THE ARBITRATOR PROPERLY AMENDED THE AWARD PURSUANT TO THE ICDR RULES.

### A.     The Arbitrator Carefully Considered And Applied The ICDR Rules In Amending The Award To Account For Acknowledged Clerical Errors.

Rule 30.1 of the ICDR Rules permits an arbitrator to amend an award in certain circumstances upon application by either party:

> Within 30 days after receipt of an award, any party, with notice to the other parties, may request the tribunal to *interpret* the award or *correct* any *clerical*, typographical, or computation errors or make an additional award as to claims presented but omitted from the award.

ICDR Rule 30.1 (available at http://www.adr.org/sp.asp?id=28144) (last visited October 31, 2007) (emphasis added).

After the issuance of the Final Award on April 20, 2007, and within the 30 day period provided by Rule 30.1, both parties served post-award briefs requesting that the Arbitrator exercise his power under Rule 30 to amend the award.

It is clear from the May 30 Order that the Arbitrator was fully aware that his authority was limited by the parameters of Rule 30 and that he carefully considered each argument within the context of that authority. See May 30 Order ¶¶ 14, 17, 26, 30, 32, 36, 38, 40, 43, 45, 49, 51, 53, 55 & 57. In fact, the Arbitrator rejected numerous arguments raised by T.Co as simply disagreements over the Arbitrator's "appreciation" of the evidence. See May 30 Order ¶¶ 26, 32, 34-36, 38, 45, 49 & 51. The contrast the Arbitrator drew between correctable "clerical errors" and disagreements over his "appreciation" of conflicting evidence demonstrates that he well understood the sharp constraints on his ability to review and alter his original decision and award.

-3-

Yet, in assessing T.Co's post-award submission identifying a host of clerical errors, Arbitrator Friedland concluded that he did make four clerical errors that materially impacted the calculation of Dempsey's damages:

- <u>Morris Industries Invoice</u>:  The Arbitrator explained that he misread an exhibit as a result of handwriting that obscured the price reflected on the document.  The invoice identified one price and, in copying that price into the Final Award, the Arbitrator misread it and therefore committed a clerical mistake.  See May 30 Order ¶¶ 29-30.

- <u>HOW Invoice (July 16, 2005)</u>:  The Arbitrator explained that he intended to consider only invoices that reflected transactions involving similar "subject pipe" – defined as "ASTM A53-02 Grade B pipe, with a maximum deviation from straightness of .025 inches is *20* feet" (Final Award ¶116 (emphasis added)) – yet erroneously included an invoice reflecting the sale of *10* foot pipe (which is a more expensive product) as a result of a clerical error.  <u>See</u> May 30 Order ¶ 40.

- <u>HOW Invoice (August 1, 2005) and Dempsey Pipe and Steel Invoice (May 11, 2005)</u>.  Just as the Arbitrator intended to analyze invoices involving only 20 foot pipe, the Arbitrator also intended to analyze invoices involving only plain end pipe.  Yet, the Arbitrator acknowledged that he analyzed two invoices reflecting pipe for sale that had been threaded and coupled (which is also a more expensive product).  The Arbitrator's intent to include only plain end pipe was clear on the face of the April 20, 2007 Final Award, <u>see</u> Final Award ¶ 118 n. 11, and clearly identified as a clerical error on the part of the Arbitrator in the May 30 Order. [2]  <u>See</u> May 30 Order ¶ 42.

As detailed above, the Arbitrator considered each of these errors carefully and determined that they were "clerical," such that they fit within Rule 30.

The Arbitrator's analysis of his own mistakes and his interpretation of the ICDR Rules he was appointed to enforce should be afforded deference.  The Arbitrator, as the one who

---

[2] To the extent Dempsey argues that only errors apparent "on the face of the award" may be considered, Dempsey ignores the court's statement in <u>Hyle</u> that the mistake may be read "in conjunction with" a clear writing, such as the amended pleadings, as in <u>Hyle</u>, or the invoices, as here.  <u>See Hyle</u>, 198 F.3d at 371.

committed the error, is in the best position to determine which one of his own acknowledged mistakes was clerical in nature or otherwise.

The parties agreed to the ICDR Rules through the sales contracts. The ICDR Rules – Rule 30 in particular – permit the Arbitrator to correct certain defined errors and, acting within his authority, the Arbitrator corrected certain errors. This Court should not lightly disturb the parties right to be bound by Rule 30 and to subject themselves to the authority of the Arbitrator to hear and consider their dispute within the context of the ICDR rules.

**B.    Dempsey's Reliance On _Hyle_ Is Misguided.**

Dempsey's argument that the Arbitrator's amendment of the award was impermissible under Hyle v. Doctor's Assocs., Inc., 198 F.3d 368 (2d Cir. 1999), is both misguided and misleading for one simple reason: Hyle does not stand for the proposition for which Dempsey cites it.

Dempsey has represented to this Court that the ruling in Hyle somehow holds that "mis-identification of the party responsible for damages is not a clerical error [that] the arbitrator may correct under the AAA corrections rules." Dempsey Mem. at 16. Yet the court in Hyle never opined on whether the arbitrator's error was a "mistake," clerical or otherwise. See Hyle, 198 F.3d at 370. Rather, the court "analyze[d] the problem somewhat differently" and ruled that "the [arbitrator's] award . . . create[d] an ambiguity" as to against which of the four respondents the arbitrator intended to award damages and enter an injunction. Id. at 371. Most importantly for purposes of the case at bar, in so doing, the court's analysis shifted the focus on the authority of the district court to remand the award to the arbitrator for clarification, rather than on the authority of the arbitrator to amend his award in the first place.

Thus, the Hyle court's decision to characterize the award as "ambiguous" does not imply anything about the nature of Arbitrator Friedland's clerical mistakes in the Final Award, or whether Arbitrator Friedland exceeded his authority under Rule 30.

Moreover, by ruling that the district court lacked the authority to remand the award to the arbitrator "for clarification in accordance with the [district court's] rulings" and requiring that the district court instead to remand the award to the arbitrator "*without restriction*, to permit the arbitrator to resolve the ambiguity," the Court of Appeals affirmed the longstanding judicial policy of according deference to an arbitrator to correct his own mistake. Hyle, 198 F.3d at 371 (emphasis added).

This Court should follow Hyle and, pursuant to the express rules under which the Arbitration was governed, honor the Arbitrator's own careful interpretation of the ICDR rules and the evidence presented before the tribunal in this arbitration.

## C.    **The Power To Correct Clerical Errors Is Meaningless Without The Power To Correct Conclusions That Were Materially Based Upon Those Errors.**

The Arbitrator's authority to correct the clerical errors identified above would be meaningless if the Arbitrator did not also have equal authority to modify conclusions that were predicated upon those errors. Simply put, conclusions that are materially based upon errors are, by definition, themselves erroneous. Arbitrator Friedland recognized this truism when he explained that "an arbitrator is empowered to change conclusions based upon clerical errors in the body of an award, even where such correction process entails an exercise of judgment beyond rote calculation." May 30 Order ¶ 57.

Unable to refute this straightforward principle, Dempsey instead urges that "the rule should not be that all clerical errors re-open awards to subjective reconsideration, however attenuated the connection between the correction and re-assessment." Dempsey Mem. at 19.

-6-

Yet neither the Arbitrator nor T.Co has ever made or relied upon such a sweeping generalization, and Dempsey's effort to distract the Court with such an obvious straw-man should not stand. There is no escaping that the Arbitrator arrived at the conclusion that $1,000 was the value of conforming goods at the time and place of acceptance by weighing a multitude of factors. There is also no disputing that it was necessary for the Arbitrator to have done so. Where, as here, the Arbitrator has acknowledged that the award was tainted by clerical errors, this Court should not deny the Arbitrator the authority to recalculate the award. This is especially true when the Arbitrator has said that he as misread documents – documents which Dempsey itself had submitted as evidence.

Dempsey's protestations that the "clerical errors did not cast *serious doubt* on the $1,000 per ton calculation" and that the "original conclusion did not depend *significantly*" on the clerical errors appear to concede that the power to correct clerical errors implies the power to correct conclusions that were materially based upon those errors. Dempsey Mem. at 19 (emphasis added). Yet Dempsey's objections entirely beg the question of who is in the best position to assess the impact of the errors on the award. Where the clerical errors were among the factors weighed to render an award, only the Arbitrator can determine the magnitude of the impact these errors had on the award. Accordingly, this Court should accord the Arbitrator no less deference to make reasonable adjustments to an award that was tainted by clerical errors than it grants him to correct the clerical errors themselves.[3]

---

[3] Dempsey's repeated reference to these invoices as being low on the Arbitrator's persuasiveness list – implying that they should be afforded less consideration – suggests that this Court (and not the Arbitrator) should be involved in the consideration and analysis of the weight of the evidence. As set forth below, see infra § III.B, this Court cannot consider the persuasiveness or the weight to be given certain facts that were relied upon by the Arbitrator.

Accordingly, the Arbitrator acted within the authority granted to him by Rule 30 of the ICDR rules and he carefully exercised that authority. The correction of four clerical errors and the accompanying reassessment of damages as a result of the Arbitrator's material reliance on the clerical errors was within the providence of the Arbitrator and his efforts are entitled as a matter of law to deference by this Court.

Dempsey's challenge to the Amended Final Award on this ground should be rejected.[4]

## III.    DEMPSEY IMPROPERLY CHALLENGES THE ARBITRATOR'S FACTUAL FINDINGS REGARDING DEMPSEY'S PROCESSING COSTS.

Dempsey's second argument raised in its petition – that the Arbitrator made a "material miscalculation" in determining Dempsey's processing costs – is fundamentally a challenge to the Arbitrator's factual findings that is precluded by the law in this circuit.

### A.    Contrary To Controlling Law, Dempsey Seeks Correction Of A Claimed "Clearly Erroneous" Factual Finding.

Recognizing, apparently, that this Court's authority to modify or vacate an arbitration award is limited to only the narrow grounds set forth in the Federal Arbitration Act, Dempsey asserts that the Arbitrator somehow miscalculated its extra processing costs and that therefore this Court may modify the award pursuant to 9 U.S.C. § 11(a) as an "evident material miscalculation of figures." Dempsey Petition at 1.

Yet Dempsey's own petition and memorandum betray Dempsey's admittedly creative argument that its basis is solely a "material miscalculation of figures." The opening paragraphs of Dempsey's petition asserts that Dempsey seeks "to correct what was in fact an evident

---

[4] Resolution of T.Co's petition in T.Co's favor would render this argument moot. The clerical errors addressed above and corrected by the Arbitrator relate to the computation of Dempsey's contractually barred lost profits. See infra § IV. The May 30 Order amending the Final Award reduced Dempsey's claim for "diminution of value." Accordingly, should the Court determine that the Arbitrator committed a manifest error of law by awarding "diminution of value" damages, it would be irrelevant whether or not the Arbitrator had the authority to amend the calculation of those damages.

material miscalculation of figures *based upon a clearly erroneous assumption of fact* that is refuted by the record and by the Arbitrator's own finding of fact, and was not a subject of contention between the parties." Dempsey Petition at 1-2 (emphasis added).

Furthermore, Dempsey repeats this argument in its memorandum of law by stating that correction of the award is warranted "where the record reveals that the calculation was premised on a *clearly erroneous assumption of fact*." Dempsey Mem. at 20 (emphasis added). In the body of Dempsey's memorandum, Dempsey points to the formula that it claims the Arbitrator should have used "had the fact that the 'shop rate' was for one hour on one machine *been found correctly*." Dempsey Mem. at 24 (emphasis added).

Thus, although Dempsey attempts to couch its argument in terms of one of the acceptable bases for modification of an award set forth in 9 U.S.C. § 11(a), it is, in fact, nothing more than a challenge to a *factual* finding of the Arbitrator – a finding that Dempsey deems was "clearly erroneous." That factual finding that Dempsey now painstakingly challenges is the Arbitrator's determination that its processing costs were $82.50 per hour. Dempsey now claims, notwithstanding the Arbitrator's findings to the contrary, that its costs were $82.50 per hour *per machine* or $330 dollars per hour.[5]

**B.    The Second Circuit Does Not Permit A District Court To Modify An Award Based Upon "Clearly Erroneous" Factual Findings.**

This Court has rejected any attempt by parties to challenge the factual findings of the arbitrator, as Dempsey seeks to do here, regardless of whether the factual finding is a "manifest

---

[5] Dempsey's reliance on the Arbitrator's questions distributed to the parties in advance of the hearing as a "Pre-Award submission finding," Dempsey Mem. at 12, mischaracterizes the nature of the Arbitrator's submission. The document upon which Dempsey relies so greatly is merely a collection of questions and assumptions – not *facts* – that the Arbitrator asked the parties to address at the upcoming final argument. These questions were not factual findings, have no relevance, and, to the extent that they contradict any facts found in the Final Award, May 30, Order, or Amended Final Award, should be ignored.

-9-

mistake" or "clearly erroneous."  For this reason, Dempsey's claim that the Arbitrator erred in calculating Dempsey's processing costs must be rejected.

"The Second Circuit does not recognize manifest disregard of the evidence as proper ground for vacating an arbitrator's award."  Wallace v. Buttar, 378 F.3d 182, 193 (2d Cir. 2004). The Second Circuit has instructed that it is improper for a court to "conduct an independent review of the factual record presented to the arbitrator panel in order to achieve the 'correct result.'"  Id. at 192.  Most recently, in Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC, 497 F.3d 133, 139 (2d Cir. 2007), the Second Circuit slammed the door on Dempsey's contention that this Court should review the arbitrator's factual findings.  The court cited other circuits' use of such standards as "completely irrational," "arbitrary and capricious" or "contrary to an explicit public policy," and then held that, "to the extent our sister circuits may have broadened somewhat the path to vacatur of an arbitration award, we decline the to wander from the narrow one embodied in our own jurisprudence."  Id.

The law of this circuit is unambiguous:  a district court may not modify or vacate an arbitration award on the ground that the arbitrator made clearly erroneous factual findings.

Dempsey fails to cite a single Second Circuit decision in support of his contention that this Court can address what Dempsey deems to be a "clearly erroneous" factual finding by the Arbitrator, and Dempsey has not addressed the clear contrary authority of Wallace and Porzig, discussed above.[6]  Instead, Dempsey cites decisions the First, Fifth, and Sixth Circuits, as well as district courts in the District of Columbia, Southern District of Texas, and Northern District of Illinois, to support its contention that this Court can address a "clearly erroneous" finding of fact.

---

[6] The recent decision in Porzig was known to Dempsey because T.Co cited and discussed that decision in its opening brief.  Indeed, Dempsey cited Porzig in its discussion of T.Co's petition, but failed to cite the decision in Dempsey's discussion of its own petition.

-10-

See Dempsey Mem. at 20-21. Yet, such authority is simply of no persuasive effect in light of the explicit rejection within Porzig of other circuits' standards of review in proceedings involving challenges to arbitration awards. See Porzig, 497 F.3d at 139. Notwithstanding the clear direction of this circuit that a mistake of fact is not a permissible ground to vacate an arbitration award, Dempsey asks this court to evaluate the record and determine that the arbitrator has, in fact, made a "clearly erroneous" mistake of fact.

As set forth above, Dempsey has attempted to obfuscate the nature of this challenge by casting it within the context of an "evident material miscalculation of figures." Yet, using the facts found by the Arbitrator, there is no miscalculation and Dempsey's attempt to challenge the award are exposed as a blatant attempt to obtain through this Court that which Dempsey was unable to obtain through the arbitral process.

The Arbitrator found that the "actual cost of straightening the pipe was . . . $82.5 per hour." Final Award ¶ 125. This is a finding of fact made by the Arbitrator. Notwithstanding this clear finding that the "actual cost" was $82.50, Dempsey asks this Court to find that the "actual cost" was really four times that amount, or $330. Although Dempsey states, on one hand, that the $82.50 is a "clearly erroneous" finding, and argues, on the other, that it is a mathematical mistake, the fundamental basis for Dempsey's argument is that the arbitrator erred in finding that the $82.50 shop rate (excluding Dempsey's profit margin) was the actual cost of processing the pipe.[7]

---

[7] Indeed, Dempsey's exercise of attempting to tie its factual argument relating to the per hour processing cost an argument raised by T.Co in a separate post-award submission relating to a $70 per ton cost for threaded and coupled pipe, highlights the factual nature of Dempsey's challenge. Dempsey does not seek to correct an error relating to the incorrect computation of numbers in a formula, but instead wishes to change the formula itself based upon a factual argument that the Arbitrator has already rejected.

The Court need go no further in resolving this precluded claim.  Dempsey's argument is predicated on a rate of $330 per hour when the Arbitrator found that it was $82.50 per hour. Because this Court cannot disturb the findings of the Arbitrator, the Court should reject Dempsey's argument that there was an error with this Arbitrator's factual findings.

C.     **The Arbitrator Has Already Rejected Dempsey's Argument That He Committed A Miscalculation.**

Dempsey has already petitioned the Arbitrator under ICDR Rule 30 to correct – *i.e.* increase – the award for processing costs.  Through a careful review of the record as a whole, however, the Arbitrator rejected Dempsey's effort to increase its processing costs.

As it related to Dempsey's contention that the $82.50 shop rate was a "per machine" rate, the Arbitrator explained:

> This issue was not clearly presented during the proceedings, and there was *no evidence* on the record that the Dempsey shop rate of $82.50 per hour was a machine hour price, rather than an actual hour price.

May 30 Order ¶ 12 (emphasis added).

Moreover, not only did the Arbitrator reject Dempsey's argument, but the Arbitrator actually determined that the award of processing cost damages of $48,513, far from being too *little*, was, in actuality, too *much*:

> Had the arguments made by the Parties in their post-Award submissions been presented pre-Award, the Arbitrator would likely have found that at least 80% of the T.Co-supplied pipe was processed not on four machines but on a single machine at Dempsey's Hooksett facility.  This finding would have necessitated reconsideration of Dempsey's evidence as to its additional processing costs, *and would likely have resulted in a reduction of the $48,513 awarded to Dempsey as compensation for the additional cost of processing the non-conforming pipe.*

May 30 Order ¶ 13 (emphasis added).

-12-

The Arbitrator then held, however, that under Rule 30 he had no power to "re-decide" the evidentiary findings and thus he determined "that no correction is warranted, or permitted, as to the calculation of Dempsey's damages for processing costs in the Award." Id.

The Arbitrator carefully considered Dempsey's contention and rejected it within the parameters of Rule 30. Accordingly, this Court should similarly reject Dempsey's attempt to seek a re-consideration of the Arbitrator's factual findings.

### D.    In Any Event, The Arbitrator Carefully Resolved Conflicting Evidence.

As set forth above, this Court need not and cannot evaluate the evidence that was placed before the Arbitrator and attempt to develop the "correct result." Wallace, 378 F.3d at 192. That evaluation was the Arbitrator's job and the record reflects that the Arbitrator performed his fact-finding function.

Significantly, the Arbitrator was faced with a constantly changing, never fully explained damages calculation for Dempsey's extra processing costs. Amazingly, Dempsey changed its processing costs damages not once but at least three times, placing four separate damages calculations before the Arbitrator.

Dempsey's original Counterclaim demanded a total of $538,693.75 in damages as a result of processing the out-of-tolerance steel. Final Award ¶ 125 n.121 Then, in Dempsey's pre-arbitration memorandum of law, Dempsey inexplicably cut its damages for extra processing in half to $261,250. Id. Like the phoenix, however, Dempsey's damages rose again by the conclusion of the arbitration, when Dempsey claimed its extra processing costs were $421,375. Id. Dempsey's processing cost evolution continued in its post-arbitration submission (which, as noted above, the Arbitrator rejected) and again in this proceeding, where, in each, Dempsey

-13-

sought extra processing costs of $194,050. Dempsey's processing cost calculation can be deemed nothing other than a moving target.

In contrast, T.Co presented evidence that Dempsey's processing costs were no more than $20,897 based upon Dempsey's own sales data. See T.Co Metals LLC Analysis of Arbitrator's Question III.C – Calculation of Dempsey's Processing Costs (attached to the Second Declaration of Alfred J. Kuffler, Esq. ("Second Kuffler Decl.") as Exhibit A, and handed to Arbitrator at final argument, see Final Award ¶ 125 n.125).[8]

The Arbitrator, having concluded that Dempsey was entitled to certain damages relating to the extra time it took Dempsey to process what the Arbitrator concluded was out-of-tolerance steel, was confronted with the fact that Dempsey could not clearly define its own damages calculation. As a result, the Arbitrator resolved conflicting evidence regarding the extent of the processing costs and reached a determination that Dempsey was entitled to $48,513 in extra processing costs. This consideration of the evidence is not only what Arbitrators do, but it is protected from judicial review under any standard. Therefore, this Court should reject Dempsey's attempt to disturb the factual findings of the Arbitrator.

## IV.   THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW BY AWARDING CONSEQUENTIAL DAMAGES TO DEMPSEY.

The Arbitrator correctly determined that the sales contracts between the parties precluded an award of consequential damages, yet ruled that Dempsey was entitled to an award based upon lost profits. In doing so, the Arbitrator failed to apply the clearly established law that makes lost profits a consequential loss. The Arbitrator agreed that the contracts governing this dispute properly disclaimed consequential damages, and because the "lost profits" awarded to Dempsey

---

[8] As noted above, see supra § III.C, the Arbitrator credited this calculation in his May 30 Order, yet determined that he could not reconsider the facts contained in the Final Award at this stage of the proceeding. May 30 Order ¶ 13.

-14-

cannot be understood as anything other than consequential damages, there is no colorable basis for this portion of the award.

### A.   Dempsey And Its Counsel Have Admitted That Its Claim Is One Of Lost Expectations.

There can be no doubt that Dempsey pursued a lost profits theory.  The Court need go no further than the testimony of Pete Dempsey, one of Dempsey's principles, who testified without equivocation at the Arbitration hearing that Dempsey was pursuing a lost profits theory:

> Q. Are you contending in this claim, Mr. Dempsey, that you lost profits because of the condition of this pipe?
>
> A. Yes.

Tr. 546:23-547:2 (12/19/06) (Peter Dempsey) (Second Kuffler Decl., Ex. B).

Thus, as set forth in the opening brief, not only did Dempsey's counsel explain that it was pursuing a lost profits theory,  see T.Co Mem. at 8, Dempsey itself contended that it was seeking lost profits through its diminution of value claim.  Dempsey cannot hide the fact that its diminution of value claim is one for lost profits.

Dempsey's counsel's brief in these proceedings further reveals the nature of Dempsey's claim as one of lost expectations:

> The arbitrator found that Dempsey priced its pipe for re-sale at a 25% mark-up over the domestic mill supply price (OFA ¶ 118), and *hoped to capture as profit* the large difference between the foreign supply price ($780 per ton in the T.Co contracts) and the domestic mill supply prices (initially determined to be $1000 per ton).  Dempsey introduced Morris's supply prices as a basis for the arbitrator to infer, as a possible explanation for Morris's relatively low resale prices, that Morris preferred to increase market share with lower prices rather than increase profit margin by capturing the domestic-import differential.

-15-

Dempsey Mem. at 6 n.3 (emphasis added). This passage confirms that Dempsey was attempting to maximize its profits through its purchase of steel pipe through T.Co and, ultimately, suffered a loss of its expectation through the transaction.

Dempsey purchased pipe from T.Co for $780 per ton and sold it for $922. The only damages that it could have suffered related to its resale of the pipe following additional processing – and the only damages that it pursued – was one for a loss of expectation or, in other words, the failure of Dempsey to sell the pipe for more than it had hoped to obtain.[9] As set forth in T.Co's opening brief, these are none other than lost profits. The Arbitrator, in determining that the contract precluded consequential damages, yet awarding lost profits, committed a manifest error of law.

### B. The Arbitrator's Award Of Consequential Damages Falls Within The Narrow Grounds For Modifying An Award.

Although the occasion for vacating an arbitration award pursuant to the manifest disregard for the law standard may be "a rarity," the occasion exists in this Circuit where, as here, "an award [contains] an actual logical impossibility." Wallace v. Buttar, 378 F.3d 182, 191 (2d Cir. 2004). In Wallace, the court discussed Hardy v. Walsh Manning Securities, L.L.C., 341 F.3d 126 (2d Cir. 2003), as a case in which such a finding was appropriate. In Hardy, this Court remanded an arbitral award for clarification because it was based upon the "highly problematic" imposition of respondeat superior liability upon a fellow employee of a wrongdoer even though "as a matter of definition respondeat superior is a form of secondary liability that cannot be imposed upon the fellow employee of a wrongdoer." Wallace, 378 F.3d at 190-91. The award

---

[9] As discussed above, Dempsey did seek damages for additional processing costs for the time it took Dempsey to straighten what the Arbitrator determined to be out-of-tolerance pipe. The Arbitrator awarded Dempsey damages of $48,513 for those costs. T.Co does not challenge the Arbitrator's award for extra processing costs in this proceeding, but rather defends the processing cost award to Dempsey from Dempsey's own challenged based upon Dempsey's dispute over the facts found by the Arbitrator. See supra § III.

of "lost profits" to Dempsey presents this Court with a similar logical conundrum: an Arbitrator cannot disallow consequential damages with one hand and award them with the other.

This Court need not disturb any of the Arbitrator's factual findings to conclude that awarding "lost profits" to Dempsey is an incoherent application of the controlling law in this case, because the Arbitrator himself ruled that such damages are legally unavailable. At the same time, it is both necessary and appropriate for this Court "to look upon evidentiary record . . . for the purpose of discerning whether a colorable basis exists for the panel's award so as to assure that the award cannot be said to be the result of the panel's manifest disregard of the law." See Wallace, 378 F.3d at 193. It is precisely the Wallace methodology that T.Co asks this Court to apply.

Here, although T.Co has consistently denied liability to Dempsey for any damages, and disputed the amount of the final award, the parties and the Arbitrator have always agreed that the only purpose of the "diminution of value" damages would be to compensate Dempsey for its alleged "lost profits." Simply put, Dempsey sold the pipe it purchased from T.Co for well more than it paid for it, and sought compensation for the additional profits it allegedly expected to make on these sales. Dempsey has, from the beginning and throughout this dispute, described and pursued this damage claim as one for "lost profits," and under the facts of this case there is no other way to classify it.

Dempsey argues that T.Co has failed to cite any "law" that the Arbitrator has manifestly disregarded. Yet, as set forth in T.Co's opening brief, T.Co has cited clear authority that had been presented to the Arbitrator that holds that lost profits are consequential damages. See T.Co Mem. at 8-10. Thus, by awarding lost profits, the Arbitrator failed to apply the clear law that makes lost profits a consequential loss. When the Arbitrator awarded Dempsey $340,587 for its

-17-

expected, but unrealized profits, he disregarded a controlling legal principle that he himself found to govern this dispute.

Accordingly, the Court should vacate the award of damages and modify the Amended Final Award to deduct the award of $340,587 to Dempsey.

## V.    <u>CONCLUSION</u>

For the reasons set forth above and in its opening brief, T.Co respectfully requests that the Court:

(a) deny Dempsey's petition on all grounds;

(b) grant T.Co's petition and vacate the award of $340,587 for "diminution of value"; and

(c) confirm the Amended Final Award, subject to the vacatur or modification of the diminution of value award.


Dated:  November 6, 2007
          New York, New York

                              Respectfully submitted,

                              MONTGOMERY, MCCRACKEN, WALKER &
                              RHOADS, LLP


                              /s/ Alfred J. Kuffler_____
                              Alfred J. Kuffler
                              Lathrop B. Nelson, III
                              123 South Broad Street
                              Avenue of the Arts
                              Philadelphia, PA 19109
                              (215) 772-1500
                              (215) 772-7620 (fax)

-18-

D'AMATO & LYNCH, LLP
Stephen F. Willig
Meleena M. Bowers
70 Pine Street
New York, New York 10270
(212) 269-0927
(212) 269-3559 (fax)

ATTORNEYS FOR T.CO METALS LLC

-19-

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2007, I filed this Memorandum of T.Co Metals LLC in Opposition to Dempsey Pipe & Supply, Inc.'s Motion to Vacate, Modify, and Correct an Arbitration Award and in Support of T.Co's Application to Modify or Vacate Arbitration Award, through the ECF system, which will send a notification to the following:

Marc J. Goldstein
Marc J. Goldstein Law Offices and Arbitration Chambers
1230 Avenue of the Americas, 7th Floor
New York, NY 10020
Goldstein@lexmarc.us

I further certify that counsel for T.Co Metals LLC has served a copy of this Memorandum to counsel identify above via electronic mail.

/s/ Alfred J. Kuffler

2236401v1