UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DEMPSEY PIPE & SUPPLY, INC.

              Petitioner,

-against-

T. CO. METALS, LLC

              Respondent.

Index No. 07 CV 7749 (PAC)

---

In the Matter of Arbitration Between

T. CO. METALS LLC,

              Petitioner/Plaintiff,

v.

DEMPSEY PIPE & SUPPLY, INC.,

              Respondent/Defendant.

Index No. 07 CV 7747 (PAC)

---

**REPLY MEMORANDUM OF DEMPSEY PIPE & SUPPLY, INC. IN SUPPORT OF ITS MOTION TO VACATE, MODIFY AND CORRECT IN PART AN ARBITRATION AWARD, AND IN OPPOSITION TO T. CO. METALS LLC'S PETITION TO VACATE THE AWARD**

MARC J. GOLDSTEIN LAW OFFICES
AND ARBITRATION CHAMBERS
1230 Avenue of the Americas, 7th Floor
New York, New York 10020
(212) 799-8605
Attorney for Dempsey Pipe & Supply, Inc.

# TABLE OF CONTENTS

Preliminary Statement.................................................................................................. 1

ARGUMENT................................................................................................................. 1

**Point I** : T. Co. Fails to Justify the Arbitrator's Reopening of
a Subjective Assessment of Fair Market Value .................................................... 1

    A. T. Co. Fails to Defend the Corrections as "Clerical" ..................................... 1

    B. Correction of "Clerical" Errors Here Did Not Justify
    Reconsideration of the Fair Market Value Determination ................................ 2

    C. Dempsey Has Correctly Analyzed the <u>Hyle</u> Case ......................................... 3

**Point II**: The Arbitrator's Miscalculation of Processing Costs is Conceded,
and Should Be Corrected....................................................................................... 4

    A. The Arbitrator Did Not Make A Finding of Fact That $82.50
    Was the Cost Per Hour for Four Machines ..................................................... 5

    B. Calculation of Processing Costs Based on $82.50 Per Hour to Run
    Four Machines Lacks a "Barely Colorable Justification"................................. 8

**Point III**: T. Co.'s Manifest Disregard of the Law Argument
Remains Without Legal or Factual Support ......................................................... 10

Conclusion................................................................................................................... 11

## Preliminary Statement

Dempsey Pipe & Supply, Inc. submits this reply memorandum in further support of its petition to vacate in part and modify in part the Amended Final Award, and in opposition to T. Co. Metals LLC's petition to vacate that Award. T. Co.'s submissions fail to show that the errors corrected by the arbitrator were clerical errors. They fail to show that processing costs were correctly calculated, or that there was a colorable justification for the crucial factual assumption (whether actually or implicitly made) in that calculation. And T. Co.'s manifest disregard of the law contention is fundamentally without merit.

## ARGUMENT

### Point I

### T. Co. Fails to Justify the Arbitrator's Reopening of a Subjective Assessment of Fair Market Value

**A. T. Co. Fails to Defend the Corrections As "Clerical"**

T. Co. does not seriously argue that the errors in question were "clerical." T. Co.'s brief simply assumes this, and concentrates on the scope of the arbitrator's correction power under ICDR Rule 30, i.e. how far may the arbitrator go in leveraging clerical corrections into altered ultimate findings of fact. But if there were no clerical errors, the matter is simple. The arbitrator lacked power to make <u>any</u> corrections.

### B. Correction of "Clerical" Errors Here Did Not Justify Reconsideration of the Fair Market Value Determination

ICDR Rule 30 refers to a power to <u>correct</u> an award, not to <u>amend</u> it. Thus clerical errors may be corrected insofar as they make the award incorrect. But the Arbitrator took the position that if, after correction of clerical errors, the Arbitrator's subjective judgment has changed, the clerical corrections pave the way for reconsideration. This, we submit, cannot be the right interpretation of the ICDR Rule.

As to the scope of the correction power, T. Co. begins its brief with the statement that "correction of these errors *necessarily altered* a key component of Dempsey's damages." (Mem. at 1, emphasis supplied). "*Necessary alteration*" could well be an appropriate standard. But the adjustment made here, a $50 per ton reduction in the fair market value of conforming pipe, was not made necessary by the "clerical" changes. The so-called clerical changes affected evidence that the Arbitrator by his own assessment ranked as fourth, sixth, and seventh, out of ten categories of evidence, in terms of persuasive force.

The probative value of the principal evidence – the price announcements of the domestic pipe manufacturer Wheatland Tube – was not undermined. None of the corrected evidence compelled, or rendered illogical, reliance upon the Wheatland Tube prices. And the arbitrator had already taken into account the other evidence by assigning a fair market value below the value indicated

by the Wheatland price announcements alone. He simply used the clerical corrections as a springboard for a bigger discount.[1]

The Arbitrator's original conclusion of the fair market value for conforming pipe was $1000 per ton was not <u>obviously undermined</u>; the logic and integrity of the Award was not diminished; and so the arbitrator exceeded his powers in reducing the fair market value to $950 per ton.

**C. Dempsey Has Correctly Analyzed the <u>Hyle</u> Case**

There is no flaw in Dempsey's analysis of <u>Hyle v. Doctor's Assocs, Inc.</u>, 198 F.3d 368 (2d Cir. 2003). The Second Circuit in <u>Hyle</u> stated that the exception to the *functus officio* doctrine for "mistakes apparent on the fact of the award is applied *to clerical mistakes or obvious errors in arithmetic computation.*" 198 F.3d at 370 (emphasis supplied, internal quotation marks omitted). The correction made by the arbitrator in <u>Hyle</u> -- *i.e.*, correcting the identity of the party liable for damages under the award – was seen by the District Court as "a simple mistake," and on that basis the District Court denied the motion to vacate the corrected award. *Id.* at 371.

The Second Circuit was reluctant to classify this mistake as a clerical error:

---

[1] The Morris Industries prices that the arbitrator corrected were for foreign pipe purchased for future delivery, as were Dempsey's prices from T.Co which prices the arbitrator, elsewhere in the Original Award, held not to be indicative of fair market value. (OFA ¶ 114; Order ¶ 35). As to the evidence consisting of invoices of Dempsey Steel Pipe Co. and HOW – processor/distributor companies at Dempsey's level in the distribution chain – there was no evidence concerning their sources of supply (i.e. foreign or domestic), the time frame of their inventory purchases, or their particular pricing strategies to end-user customers in relation to current "spot market" domestic mill supply prices like those quoted by Wheatland Tube. For this reason, those invoices were not clearly probative of the current supply prices offered by domestic mills like Wheatland.

> It is arguable that the designation of Gruelich, rather than Hyle, as the respondent against whom the award ordered damages and an injunction was, as the District Court ruled, a 'mistake,' but if so characterized, the issue would then arise whether this is the sort of 'mistake' that may be corrected by an arbitrator or ordered to be corrected by a court.

*Id.*

By "analyz[ing] the problem somewhat differently," (*id.*), *i.e.* as an "ambiguity" that justified remand, the Second Circuit dodged that issue, and permitted the arbitrator to make the same correction under a less vulnerable legal rubric than "mistake." The Court thus rendered moot the difficult question of whether the arbitrator's mistake -- based upon overlooking information in the pleadings and the record -- qualified as "clerical error." It is thus entirely correct to say that Hyle supports the proposition that such mistakes in an award are not "clerical errors."

### Point II

### The Arbitrator's Miscalculation Of Processing Costs Is Conceded, And As Such Should Be Corrected

T. Co. in effect concedes that Dempsey's processing costs for the defective pipe were miscalculated by the Arbitrator, with large dollar consequences in the Award adverse to Dempsey. T. Co.'s position is that the error is not correctible under the FAA, because, according to T. Co, it is not an *arithmetic error* but instead is an *erroneous finding of fact*. T. Co.'s position is wrong because, as we show below, the arbitrator did not make a finding that $82.50 per hour was a cost for operating four machines instead of one; and indeed in the pre-Award submission (Dempsey Petition Ex. 4, section C.1 at 2d bullet point) he had expressly found that $82.50 per hour was a cost to operate one machine, not four.

Further, according to T. Co., an erroneous finding of fact by an arbitrator is completely unreviewable. But that is not the law. "Barely colorable justification" is, at a minimum, what the Second Circuit cases require.

### A. The Arbitrator Did Not Make A Finding of Fact That $82.50 Was The Cost Per Hour for Four Machines

At no point in either the Original Award, the Order, of the Amended Award, does the Arbitrator find that $82.50 was the cost per hour to Dempsey to operate all of its four processing machines at full capacity. The only point at which the Arbitrator made an explicit finding on this issue was in his pre-Award submission to the parties on March 8, 2007. In that submission, he found based on Dempsey's evidence that $125/hour ($82.50 exclusive of profit margin) was the cost to run <u>one</u> Dempsey processing machine for one hour. (Dempsey Pet. Ex. 4, section C.1, 2d bullet point).[2]

The Original Award stated that Dempsey's processing cost was $82.50 per hour (OFA ¶ 125), but did not refer to the pre-Award finding of fact and did not state whether this was the cost for running one machine or four. Separately, the Original Award stated that Dempsey used all four machines, at full capacity (3 pieces per hour per machine), to process the defective pipe. (OFA ¶ 127). Deriving the number of actual hours needed to do the work with four machines, from the total number of defective pieces and the processing rate of 12 pieces per hour, and applying the $82.50 per hour rate to those actual hours, the Award calculates the processing costs. (OFA ¶¶

---

[2] Dempsey did not argue for a cost per hour of $330. That is simply T. Co.'s forensic device to obscure the arbitrator's implicit conversion of the $82.50 per hour figure, from a rate per machine hour, as determined expressly in the pre-Award submission, to a rate per hour for four machines, as is implicit in the processing costs calculation in the Award.

128-129). If the Arbitrator intended to reverse course and hold that $82.50 per hour was the cost to run four machines, he would have said so. His finding that the "actual cost" of processing was $82.50 per hour is inherently ambiguous. In view of the pre-Award finding of $82.50 per machine hour, the better view is that the Arbitrator neglected (whether deliberately or inadvertently) to apply the required multiple of four.

In the May 30 Order rejecting Dempsey's petition to correct, the Arbitrator still did not make explicit a finding of fact that Dempsey's processing costs were $82.50 per hour for four machines, i.e., $20.625 per hour per machine. Instead, the Arbitrator asserted that Dempsey had failed to present the matter clearly (Order ¶ 12), and – in contradiction of his own pre-Award finding of fact, and despite the evidence discussed elsewhere in that Order showing processing costs to be $140 per hour per machine (Order ¶ 43) – stated that there was <u>no evidence in the record</u> that $82.50 was the cost per machine hour. (Order ¶ 12). Thus, while it is fair to say the Arbitrator declined to find that $82.50 was the cost per machine hour, still he did not make an express finding, in the Order, or in the Amended Award, that $82.50 was the cost to run four machines. He then proceeded to discuss an alternative basis for a result even worse for Dempsey – T. Co.'s thesis that nearly all the processing had been done at the New Hampshire plant on one machine – and stated that if this argument had been presented before the Award, he would have accepted it. (Order ¶13). But this statement was odd, to say the least, because, as the record clearly shows, the argument had indeed been made by T. Co. at the final oral hearing (MJG Decl. Ex. 6), and in the Original Award the Arbitrator had rejected it by finding that all four machines, one in New Hampshire and three in Bolivar, New York, had been used at full capacity to process the bad pipe. (OFA ¶ 127).

6

Whether the most appropriate legal characterization is calculation error (inadvertent or deliberate), or erroneous finding of fact, turns on the record. That record favors Dempsey's position that there was a calculation error, because there was no finding of fact that $82.50 was a four-machine hourly cost, and the ambiguity in the Award is properly resolved based on the pre-Award finding of fact, not contested by the parties, that the $82.50 hourly cost was for operation of one machine.

The fair inference is that the Arbitrator (i) whether intentionally or by inadvertence, subtly changed the specific pre-Award finding of $125/$82.50 <u>per machine hour</u> (Dempsey Pet. Ex. 4, Section C.1 2d bullet point), to a facially ambiguous $82.50 <u>per hour</u> (OFA ¶ 125); and (ii) whether intentionally or by inadvertence, omitted the multiple of four that had to be applied to the per-machine-hour rate, based on the use of four machines, not one, to process the defective pipe (OFA ¶ 127). Then, when confronted with Dempsey's petition to correct, the Arbitrator, unable to state candidly that he had found $82.50 per hour to be the cost to run four machines, unfairly claimed deficiency in the Dempsey's evidence (Order ¶ 12), even though he had already found Patrick Dempsey's testimony sufficient to support a finding of $82.50 per machine hour in the pre-Award submission. He then inexplicably proclaimed his adherence to the supposedly new, but in fact already-rejected, argument by T. Co. that more than 80% of the pipe had been processed on one machine at the Dempsey factory in New Hampshire. (Order ¶ 13). Thus, the Order was an untenable defense by the Arbitrator of an insupportable position.

### B. Calculation of Processing Costs Based on A Finding of Fact of $82.50 Per Hour to Run Four Machines Lacks a "Barely Colorable Justification"

If the Court views this matter as involving only a mistake of fact, Dempsey should still prevail. (A *mistake of fact* should be distinguished from an *erroneous finding of fact,* as only the latter involves conscious exercise of judgment by the arbitrator). Under Second Circuit law, while manifest disregard of the evidence is not a permissible ground for vacatur, still there must be at least a "barely colorable justification" for the arbitrator's decision. *See* Wallace v. Buttar, 378 F.2d 182, 193 (2d Cir. 2004) (award "should be enforced. . . if there is a barely colorable justification for the outcome reached"). *Accord,* Nicholls v. Brookdale Univ. Hospital, 204 Fed. Appx. 40, 43, 2006 U.S. App. LEXIS 26152 at **7 (2d Cir. Oc. 18, 2006) (award must be supported at least by a "barely colorable justification"); Appel Corp. v. Katz, 217 Fed. Appx. 3, 4 ; 2007 U.S. App. LEXIS 2541 at **5 (2d Cir. Feb. 2, 2007) (same).

The requirement of a "barely colorable justification" is not materially different from the First Circuit's rule that an award may be vacated if it fundamentally depends upon a mistakenly assumed fact that is concededly a non-fact. *See, e.g.* cases cited a page 21 of Dempsey's Memorandum. An award that is in a fundamental way or essential part based upon a non-fact lacks a "barely colorable justification." Here, it was not a barely colorable justification for the arbitrator to claim, in the Order, that there was no evidence to support Dempsey's position. First, he had already accepted Dempsey's position based on Patrick Dempsey's written testimony. Second, the evidence that Dempsey's processing costs were $70 per ton ($140 per hour per machine, inclusive of profit element) (MJG Decl. Ex. 7), cited to the arbitrator by T. Co. (MJG Decl. Ex. 3) and accepted as correct by the arbitrator in another section of the Order (¶ 43), was irrefutable evidence that the $82.50 rate ($125 with profit component) was a per machine hour

8

rate. As there is no answer to this, T. Co. does not even attempt an answer in its brief. Further, T. Co.'s New Hampshire thesis had been argued by T. Co. at the final hearing, and it was rejected by the arbitrator when he found that all four Dempsey machines, one in New Hampshire and three in Western New York, were used at full capacity to process the defective pipe. Therefore, it was not a colorable justification for the outcome for the arbitrator to say, as he did in the Order, that T. Co.'s argument had not been raised before, and that had it been raised he would have found it persuasive.

The Second Circuit's decision in Porzig v. Dresdner, Kleinwort, Benson N.A. LLC, 497 F.3d 133 (2d Cir. 2007) did not change the law, but adhered to the "narrow [path] of [Second Circuit] jurisprudence," which includes the threshold requirement of a barely colorable justification. In footnote 3 of the opinion, the Court gives examples non-statutory grounds for vacatur, recognized by other Circuits, which the Second Circuit indicates it does not accept. The First Circuit's rule, that an award fundamentally based upon a conceded non-fact cannot stand, is not in that list. Neither Porzig nor any other case cited by T. Co. holds affirmatively that an arbitration award fundamentally based upon a conceded non-fact may not be vacated. Such an award would lack the minimum "barely colorable justification." This Award, in respect of processing costs and damages based on the processing costs calculation, suffers from that defect.

## Point III

### T. Co.'S Manifest Disregard Of The Law Argument
### Remains Without Legal Or Factual Support

The Awards, original and amended, clearly state that the damages awarded to Dempsey, apart from incidental damages, are the damages permitted to a buyer who accepts non-conforming goods under Section 2-714(2) of the Uniform Commercial Code. Only T. Co., not the Arbitrator, asserts that there has been an award of "lost profits." (The Arbitrator expressly rejected T. Co.'s contention of manifest error. Order ¶ 53). As we show in our Memorandum (at p. 25), the Code does not treat 2-714(2) diminution in value damages as lost profits consequential damages, and neither does the Award.

A buyer suffers and may recover diminution in value damages under §2-714(2) even if the buyer has not yet resold any of the goods, assuming there has been no breach of the duty to mitigate. Here the arbitrator measured Dempsey's diminution in value damages by the difference between the fair market value of conforming pipe and non-conforming pipe. (Amended Award ¶¶ 129, 145-146). The price that Dempsey would have realized upon resale, had the pipe been conforming pipe, and Dempsey's expected profit margin, did not enter into the calculation.

## Conclusion

For the reasons stated here and in Dempsey's petition and moving memorandum, Dempsey's petition should be granted and T. Co.'s petition should be denied.

Respectfully submitted,

MARC J. GOLDSTEIN LAW OFFICES AND
ARBITRATION CHAMBERS

By: _____
Marc J. Goldstein (MJG-8701)

1230 Avenue of the Americas, 7th Floor

New York, New York 10020

(212) 799-8605

Counsel for Dempsey Pipe & Supply, Inc.