UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
T. CO. METALS LLC,                              :

        Plaintiff,                              :

                                    07 Civ. 7747 (PAC)
   -against-                                   :

                                    ORDER
DEMPSEY PIPE & SUPPLY, INC.,        :

        Defendant.                         :
------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

T. Co. Metals LLC ("T. Co.") and Dempsey Pipe & Supply, Inc. ("Dempsey") bring cross-motions to vacate, modify, and correct an arbitration award pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10 and 11, which dealt with a dispute over the sale and delivery of steel pipe. T. Co. seeks to vacate the arbitral award, claiming that the Arbitrator "manifestly disregarded the law" when he awarded lost profits to Dempsey in violation of a contractual clause. Dempsey cross-moves to vacate, modify, or correct the award on the grounds that: (1) the Arbitrator exceeded his powers by correcting "errors" contained in the original arbitration award, and (2) there were "material miscalculations" in the final award's computation of damages. For the reasons set forth below, T. Co.'s motion is denied, and Dempsey's motion is granted in part and denied in part.

## SUMMARY OF FACTS

Pursuant to a series of sales contracts executed in February and April 2005, T. Co agreed to sell 2,440 metric tons of steel pipe to Dempsey. (See Sales Contracts 2094 and 2095, Kuffler Declaration ("Kuffler Decl.") Exhibit ("Ex.") A.) Thereafter, T. Co. delivered four shipments of steel pipe to Dempsey in the summer of 2005. Despite the fact that the shipments contained "defective" steel pipe (the pipe was out of alignment), Dempsey accepted, processed, and sold all

1

of the pipe from each of the four shipments, with the exception of a small amount rejected in the second shipment. Dempsey purchased the pipe for $780 per short ton, processed it, then re-sold it (at a profit) for $922 per short ton. (See Final Award, April 20, 2007, Kuffler Decl. Ex. E ¶¶ 114-15.)

After shipping the pipe, T. Co. issued invoices to Dempsey totaling $1,993,145.53, an amount reflecting the total amount of the original contract price, but Dempsey paid only $1,655,105.81, and then withheld further payment. Accordingly, T. Co. filed a demand for arbitration on June 19, 2006, seeking $338,039.72. Dempsey answered and counterclaimed for $1,895,052.00 arguing that the steel pipe it received from T. Co. was defective and that the defect had caused Dempsey to incur losses with respect to both the "diminished value" of the pipe and additional expenses for processing, storing, and shipping the damaged pipe.[1]

The Arbitrator, Paul D. Friedland, Esq., was appointed in August 2006. In November 2006, the Arbitrator denied T. Co.'s request for an interim award and proceeded to the main arbitration. Arbitration hearings were conducted in December 2006 and February 2007, and closing arguments were conducted on March 19, 2007. The parties concede that during the Arbitration and its various hearings, all of the legal questions now at issue were fully briefed to the Arbitrator. (See Transcript of Oral Argument, April 24, 2008 ("Arg. Tr.") at 16, 18.)[2] On April 20, 2007, the Arbitrator issued a "Final Award" (hereinafter, the "Original Award"), granting partial recovery to both parties. (See Final Award, April 20, 2007, ("Orig. Award") Kuffler Decl. Ex. E ¶ 159.) T. Co. was awarded $338,039.72 for the unpaid invoices, and

---

[1] In essence, Dempsey argued that it incurred additional costs because it had to straighten the bent pipe before the pipe could be re-sold for a profit.
[2] At oral argument on April 24, 2008, both parties made clear that all of the issues before this Court had been presented and briefed to the Arbitrator:
    The Court:    All the arguments you are making you made to the arbitrator and he ruled on them one way or the other, some to your liking, some not to your liking.
    T. Co Counsel:    That is correct, your Honor . . . .
(Arg. Tr. at 16.) Dempsey's counsel also conceded that "[e]verything was before the arbitrator." (Arg. Tr. at 18.)

2

Dempsey was awarded $420,537.00 for the diminished value of the defective pipe. (Orig. Award ¶ 159.) Both parties promptly filed applications to amend the award, and on May 30, 2007, the Arbitrator issued an order modifying the Original Award. (Order, May 30, 2007, ("Am. Order"), Kuffler Decl. Ex. F.) The Arbitrator acknowledged several "clerical errors" in the Original Award and reduced the amount awarded to Dempsey. (Am. Order ¶¶ 56-58.) On June 4, 2007, the Arbitrator finalized the "Amended Final Award" (hereinafter, the "Amended Award"), which is the subject of this litigation. (Amended Final Award, 4 June 2007 ("Am. Award"), Kuffler Decl., Ex. G.) Thereafter, both parties petitioned this Court to review the Amended Award.[3]

## DISCUSSION

**I.   Applicable Standard**

Federal courts give great deference to arbitration awards. See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003); Clarendon Nat'l Ins. Co. v. TIG Reinsurance Co., 183 F.R.D. 112, 115 (S.D.N.Y. 1998). Indeed, "courts have consistently held that 'arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" Clarendon Nat'l, 183 F.R.D. at 115 (quoting Dirussa v. Dean Witter Reynolds, Inc., 121 F.3d 818, 821 (2d Cir. 1997)). As the Second Circuit has stated, "[i]t is well established that courts must grant an arbitration panel's decision great deference. A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a

---

[3] To call the Original Award a "Final Award" was a misnomer in light of the fact that the Arbitrator later issued both an "Order" (which, inter alia, described the parties' objections to the original "Final Award" and the Arbitrator's treatment of the objections) and then an "Amended Final Award" encompassing the holdings of the Order. To avoid confusion, the Court recaps its references here: (1) the original "Final Award" dated 20 April 2007 is hereinafter referred to as the "Original Award" ("Orig. Award"), (2) the "Order" dated 30 May 2007 which details the arguments/justifications for amendment is hereinafter referred to as the "Amendment Order" ("Am. Order"), and (3) the "Amended Final Award" dated 4 June 2007 (the award on review in this case) is referred to as the "Amended Award" ("Am. Award").

very narrow set of circumstances . . . ." Duferco Int'l, 333 F. 3d at 388.  The grounds for upsetting an arbitration award are "grudgingly narrow," Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd., No. 96 Civ. 6441 (PKL), 2000 WL 60200, at * 5 (S.D.N.Y. Jan. 25, 2000), and "[i]f 'a barely colorable justification' for the arbitration award exists, the award should be confirmed," Play Star, S.A. De C.V. v. Haschel Exp. Corp., No. 02 Civ. 7364 (LLS), 2003 WL 1961625, at *2 (S.D.N.Y. Apr. 28, 2003) (quoting Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union, AFL-CIO, 954 F.2d 794, 797 (2d Cir. 1992)).

The FAA, 9 U.S.C. §§ 1 et seq., defines the limited set of circumstances when a federal court may modify, vacate, or correct an arbitral award.  The reasons justifying vacatur are outlined in Section 10, and dictate that an award may be vacated where, inter alia, "the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4).  The reasons justifying modification or correction are delineated in Section 11, and permit modification where, inter alia, "there was an evident material miscalculation of figures" in the arbitral award.  Id. § 11(a).

1. **T. Co.'s Motion**

    a. **Manifest Disregard of the Law**

T. Co. petitions the Court to vacate, modify, or correct the arbitration award on the grounds that the arbitrator "manifestly disregarded the law." (T. Co. Memorandum at 14-16.) Prior to the Supreme Court's decision on March 25, 2008 in Hall Street Associates, L.L.C. v. Mattel, Inc., --- U.S. ---, 128 S.Ct. 1396 (2008), the Second Circuit followed a more expansive view of judicial review of arbitration awards which allowed an award to be vacated both under Sections 10 and 11 of the FAA and also when an arbitrator "manifestly disregarded the law." See Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004); Hoeft v. MVL Group, Inc., 343 F.3d 57, 64 (2d Cir. 2003); Hardy v. Walsh Manning Secs., LLC, 341 F.3d 126, 129-30 (2d Cir.

4

2003). The Supreme Court explicitly held in Hall Street, however, that FAA §§ 10 and 11 are the "exclusive" grounds for vacatur and/or modification of an arbitral award. 128 S. Ct. at 1403. "Manifest disregard," therefore, is no longer an independent basis on which to upset an arbitration award.[4] Other federal courts considering the impact of Hall Street on arbitral awards have reached the same conclusion. See, e.g., Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 124 n.3 (1st Cir. 2008) ("We acknowledge the Supreme Court's recent holding in [Hall Street] that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the Federal Arbitration Act"); Prime Therapeutics LLC v. Omnicare, Inc., --- F. Supp. 2d ---, 2008 WL 2152207, at *5 (D. Minn. May 21, 2008) ("The Supreme Court has made clear that Sections 10 and 11 of the FAA provide the exclusive grounds for vacating and modifying an arbitration award."); Ascension Orthopedics, Inc. v. Curasan, AG, No. 07 Civ. 4033 (GHM), 2008 WL 2074058, at *2 (S.D. Tex. May 14, 2008) ("[T]he Supreme Court's decision in Hall Street is unequivocal that the grounds upon which vacatur may be based as listed in § 10 are exclusive."). Under Hall Street, the party seeking to vacate or modify an arbitration award must specifically identify one of the statutory grounds set forth in FAA §§ 10 and 11. T. Co. has failed to do so here. Its original motion relied on the existence of "manifest disregard" as a separate basis for vacatur, and its attempts to recast the argument in other ways are not compelling.[5] As a result, T. Co.'s motion to vacate or modify the award on this basis is denied.

---

[4] Perhaps the term might be explained as a catch-all shorthand for the statutory grounds specifically expressed in the FAA, but there is no doubt that the statutory bases are exclusive. Hall Street, 128 S. Ct. at 1404.

[5] T. Co. argues that, despite Hall Street, its motion survives under either 9 U.S.C. § 10(a)(4), permitting vacatur "where the arbitrators exceeded their powers," or under Wilko v. Swan, 346 U.S. 427 (1953), rev'd 490 U.S. 477 (1989). (Arg. Tr. at 6-7.) These arguments are not compelling as they address problems wholly distinguishable from the issue at bar. In this case, T.Co. argues that the damages awarded by the Arbitrator conflicted with a contractual provision; with respect to that argument, § 10(a)(4) does not apply (for a discussion of the proper application of § 10(a)(4), see infra Part 2(a)). With regard to Wilko, its central holding (that Section 14 of the Securities Act of 1933 voided an agreement to arbitrate claims arising under that Act) was overruled by Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989), and any other application here is foreclosed by the Supreme Court's discussion of the case in Hall Street, 128 S. Ct. at 1403.

Even if "manifest disregard of the law" were still a viable theory, it would be inapplicable here. T. Co. complains that the award of lost profits was improper because it violated a contractual clause precluding consequential damages, but the Arbitrator considered and rejected that argument. In calculating damages in the Original Award, the Arbitrator specifically held that the parties' consequential damages provision of the contract was valid and enforceable. (Orig. Award ¶ 110) He also found, however, that Dempsey should be awarded damages for both the diminished value of the out-of-tolerance pipe, and the associated processing costs for bringing the pipe into compliance. (Orig. Award ¶¶ 111-13, 135.) When T. Co. later argued that such an award constituted "back-door" compensation for lost profits which amounted to an "error of law" in violation of the contractual provision (Am. Order ¶ 52), the Arbitrator found that it was beyond his powers "to amend the Award on the basis of an 'error of law' even if there was such an error, <u>which allegation the Arbitrator rejects</u>" (Am. Order ¶ 53) (emphasis added). The Amended Award confirmed this result. (Am. Award ¶¶ 119-21, 122-34, 146-49.)

As Judge Marrero held in <u>Commercial Risk Reinsurance Co. Ltd v. Security Ins. Co. of Hartford</u>, "[t]he interpretation of contractual terms by arbitrators is not subject to judicial challenge, even when the award may be grounded on an erroneous construction of the parties' agreement." 526 F. Supp. 2d 424, 432 (S.D.N.Y. 2007). In <u>Commercial Risk</u>, as here, the record indicated that the parties had "exhaustively presented to the arbitrators their respective positions concerning the issues," and those exchanges made clear that the underlying dispute involved a disagreement "about how the pertinent contract provisions should be construed." <u>Id.</u> The court found that the panel's Award essentially concurred with one party's argument and rejected the other's, and held that the non-prevailing party's disagreement with the panel's decision was not sufficient ground to vacate the Award. <u>Id.</u> at 432-33. The court explained:

> The Second Circuit has underscored that it "has not been receptive at least in recent years to invitations to second-guess an arbitrator's resolution of a contract dispute." <u>Matter of</u>

6

> <u>Andros</u>, [579 F.2d 691, 703 (2d Cir. 1978)] ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his") (citation omitted).

<u>Id.</u>  In the case at bar, T. Co. and Dempsey fully briefed the dispute regarding the consequential damages provision of their contracts to the Arbitrator, and he reached a reasoned judgment that the damages awarded based on diminished value of the pipe did not violate the parties' agreements.  Under these circumstances, and in light of the relevant case law, dissatisfaction with the Arbitrator's decision does not constitute "manifest disregard of the law," nor can it constitute a valid objection under FAA §§ 10 and 11.  T. Co.'s motion is denied.

    **2) Dempsey's Motion**

        **a.  Clerical Errors**

Section 10(a)(4) of the Federal Arbitration Act gives a federal court the power to vacate an arbitral award "[w]here the arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4).  One way in which an arbitrator may exceed his powers is by acting when he is <u>functus officio</u>, or without legal authority.  As Judge Kaplan explained in <u>Global Reinsurance Corp. v. Argonaut Ins. Co.</u>,

> [t]he common law doctrine of <u>functus officio</u> means without further authority or legal competence because the duties and functions of the original commission have been fully accomplished.  Arbitrators become <u>functus officio</u> when they have decided all issues submitted for arbitration.

548 F. Supp. 2d 104, 110 n.41 (S.D.N.Y. 2008) (citations and quotations omitted); <u>see also</u> <u>Hyle v. Doctor's Assocs., Inc.</u>, 198 F.3d 368, 370 (2d Cir. 1999) ("'[O]nce arbitrators have finally decided the submitted issues, they are, in common-law parlance, 'functus officio,' meaning that their authority over those questions is ended'") (quoting <u>Trade & Transport, Inc. v. Natural Petroleum Charterers Inc.</u>, 931 F.2d 191, 195 (2d Cir. 1991)).  A limited exception to the <u>functus officio</u> doctrine permits an arbitrator to correct clerical mistakes which are apparent on the face

of an issued award. Hyle, 198 F. 3d at 370.[6]  "Clerical mistakes" have been defined as "obvious errors in arithmetic computation." Laurin Tankers Am., Inc. v. Stolt Tankers, Inc., 36 F. Supp. 2d 645, 651 (S.D.N.Y. 1999) (quoting Colonial Penn. Ins. Co. v. Omaha Indemnity Co., 943 F.2d 327, 332 (3d Cir. 1991)).  Non-obvious errors which are not apparent on the face of the award, therefore, may not be corrected by an arbitrator who has issued an award because to do so would violate the functus officio doctrine.

Dempsey argues that the Arbitrator was functus officio, and therefore exceeded his powers, when he corrected purportedly "clerical" mistakes in the Original Award and issued the Amended Award.  The Court agrees.  In order to reach his ultimate conclusions in the Original Award, the Arbitrator calculated, based on a host of invoices and exhibits submitted by the parties, that the fair value of conforming steel pipe (as opposed to defective steel pipe) was $1000 per short ton.  (Orig. Award ¶ 119.)  In his Order of May 30, 2007 amending the award, the Arbitrator reduced that value to $950 per short ton on the grounds that he: (1) misread a unit of measure on one invoice (Morris Industries Invoice, Dec. 20, 2004), (2) considered an invoice on the price of 10-foot length pipe, when 20-foot length pipe is actually in dispute (HOW Invoice, July 16, 2005), and (3) failed to explicitly distinguish differences between invoices for "threaded and coupled pipe" and invoices for "plain end pipe" (HOW Invoice, Aug. 1, 2005; Dempsey Invoice, Nov. 5, 2005). (See Am. Order ¶¶ 28-30, 40, 42, 56-57.)  None of these corrections are "clerical" in nature.  They are reinterpretations of the record and are used by the Arbitrator to modify his conclusions.  It was beyond the Arbitrator's power to act in this way.

---

[6] The ability to correct clerical errors derives in part from the International Arbitration Rules created and promulgated by the American Arbitration Association's International Centre for Dispute Resolution (ICDR).  The International Rules apply to this case because the steel pipe at issue was imported from Chile, giving the dispute a "substantial international aspect." (Arg. Tr. at 4.)  According to Article 30, Rule 30.1 of the International Rules, "[w]ithin 30 days after the receipt of an award, any party, with notice to the other parties, may request the tribunal to interpret the award or correct any clerical, typographical or computation errors or make an additional award as to claims presented but omitted from the award." American Arbitration Association, International Arbitration Rules, Article 30.1, available at http://www.adr.org/sp.asp?id=33994.

"Clerical" errors are obvious errors in mathematical computations.  A clerical error occurs, for example, where an arbitrator concludes that two-plus-two equals five.  Such errors are both arithmetic and apparent on the face of an award without further inquiry or investigation.  In contrast, the corrections made by the Arbitrator in this case required interpretation, analysis, and reference to extrinsic evidence.  The changes involved a reassessment of invoices already considered, additional investigation into pipe-length for various orders, and further contemplation about the nature of the "ends" of steel pipe.  Errors involving these kinds of considerations are clearly not "clerical," not "apparent on the face of the award," and, while their correction requires additional calculation, they are not "arithmetic" in nature.  Under these circumstances, once the Arbitrator issued his Original Award, he was <u>functus</u> <u>officio</u> and powerless to change such non-clerical errors.  The Court agrees with Dempsey that the Arbitrator exceeded his powers, and grants its motion to modify the award on this basis.

      **b)  Material Miscalculation**

Dempsey also argues that the Arbitrator "materially miscalculated" with respect to the costs incurred for straightening the defective pipe, and requests that the Award be modified to correct this mistake. (Dempsey Memorandum ("Dempsey Mem.") at 20-24.)  Section 11 of the FAA permits modification of an arbitration award where there is "an evident material miscalculation of figures." 9 U.S.C. § 11(a). As other courts in this district have found, "the word 'miscalculation' implies inadvertence or an error caused by oversight." <u>Companhia de Navegacao</u>, 2000 WL 60200, at *6 (quotations and citations omitted).  Where, however, the award implies that a relevant calculation "was not the result of some careless or obvious mathematical mistake, but rather[,] the disposition of a substantive dispute that lay at the heart of the arbitration[,]" <u>id.</u>, the figure is not a "material miscalculation" within the meaning of Section

9

11, it is instead a "deliberate answer to a question submitted for [the Arbitrator's] determination," id. at *7.

In the instant case, Dempsey argues that the Arbitrator materially miscalculated the hourly cost to straighten the bent pipe because his calculation accounted for the cost of using only one machine per hour, when Dempsey actually used four. (Dempsey Mem. at 20 (arguing that the Arbitrator miscalculated by finding "that Dempsey's 'shop rate' for processing pipe, $125 per hour, pertained to the hourly output not of four processing machines, but of one as the arbitrator initially found[.]") (emphasis added).) As a result, Dempsey contends that the actual cost to process the defective pipe differed from the amount calculated by the Arbitrator by a factor of four (i.e. that the Arbitrator's calculation accounted for only one-fourth of the actual cost per hour to straighten the pipe). Dempsey, however, directly told the arbitrator that four machines were used to process the defective pipe in the Arbitration proceedings, (Orig. Award ¶ 127), and specifically petitioned the arbitrator to correct the purported error after the Original Award was issued (Am. Order ¶ 10.) The Arbitrator refused to alter his decision and explicitly held that "there was no evidence on the record that the Dempsey shop rate . . . was a per machine hour price, rather than a per actual hour price." (Am. Order ¶ 12 (emphasis added).) On these facts, the determination as to the number of machines used by Dempsey to process the defective steel is clearly not a "careless or obvious mathematical mistake," it is instead a "deliberate answer to a question submitted for [the Arbitrator's] determination." Companhia de Navegacao, 2000 WL 60200 at *6-7. As such, it cannot form the basis for modification due to "material miscalculation" under Section 11. 9 U.S.C § 11.[7] Dempsey's motion to modify the arbitration award on this basis is denied.

---

[7] Dempsey also contends that a "material miscalculation" may be found where a calculation is premised on an erroneous assumption of fact, but it fails to cite a single Second Circuit or Southern District of New York case in support of this view. In light of the "grudgingly narrow" set of circumstances where a court may upset an arbitration

## CONCLUSION

T. Co.'s motion to vacate, modify, and correct the arbitration award is DENIED. Dempsey's motion is GRANTED in part and DENIED in part. The Original Final Arbitration Award, dated 20 April 2007, is confirmed in full. The Clerk of Court is directed to terminate these motions and close this case.

Dated: New York, New York
July 8, 2008

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge

---

award, and the strong policy reasons supporting the broad deference afforded an arbitrator, the Court declines to modify the award on this basis.